## THE WYOMISSING.

### PENNSYLVANIA & DELAWARE OIL CO. v. DIRECTOR GENERAL OF RAILROADS.

(District Court, S. D. New York. December 20, 1922.)

Collision ⬡=66—Evidence held to show that it was respondent's tug which caused the damage.

Testimony by a disinterested witness, who made a written report the day after the accident, that it was respondent's tug which caused the damage, *held* sufficient to establish that fact, notwithstanding testimony by the tug's master which indicated that the tug was not at the place of the accident until a later hour than that at which it occurred.

In Admiralty. Libel by the Pennsylvania & Delaware Oil Company against the Director General of Railroads for damage claimed to have been caused by the tug Wyomissing. Decree rendered for libelant.

Anthony V. Lynch, Jr., of New York City, for libelant.
R. F. Lenahan, of New York City, for respondent.

⬡=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEARNED HAND, District Judge. I think, on the whole, I must give a decree for the libelant. It is a very perplexing situation, as it so often is where the identity of the offending tug is concerned. I never feel quite that certainty that I should like, but the witness who testified for the libelant was entirely disinterested, a man of good intelligence, and of no conceivable bias. He very distinctly remembers that the tug which did the damage was the Wyomissing, and he made his report within a day thereafter, which shows that there is no mistake of memory. As there is no bias, the only mistake, if there is one, must be in observation. Now that is conceivable, naturally, but on the balance of probability I do not think I ought to suppose that he went so far wrong.

Again, we have documentary evidence which makes it entirely possible that the Wyomissing was the boat in question. I quite agree with Mr. Lenahan that this did not happen on the way down. I do not think there was any reason why the Wyomissing, with a light tow, should have turned to and hung on to the Standard pier. The record shows that she took part in towing the loaded tow which left the coal terminal at 6:50 the afternoon before, and got to the stakes in the Upper Bay at 10:30 the next morning.

We also have it in evidence that the Wyomissing left her tow in charge of other tugs on the way down, and the question then becomes one of time. The master of the Wyomissing says that he had gone off watch before he took on the new tow, and that he went off watch at 6 o'clock. I must assume that this collision happened before dawn, and there is thus a difference of time there which cannot be wholly reconciled. However, it is now a matter of nearly five years, and the recollection of the master of the Wyomissing as to the time when he gave up the tow may be wrong. He may not have gone all the way to Cartaret. He did not take part in pulling up the loaded boats, and it is entirely possible that the Wyomissing was hanging on there at about 4 or 5 in the morning, which would be just about the time when the tide would change, and the flood would begin. The loaded tow might have gone up on the flood as far as that, and then waited.

I am inclined to think that that is the proper explanation of what happened. It reconciles nearly all the facts. But, whether it reconciles all or not, I have to choose here between a witness who is obviously honest, and who made a contemporaneous written statement which accords with what he says now, against a man who naturally has a recollection which excludes from it that which is disagreeable. I speak without irony, or without the least attempt to question his credibility.

Of course, with that choice, finding incontrovertible the testimony that the tug was thereabouts, and at one time connected with just such a tow as is described, I think that the only possible solution will be to give a decree for the libelant.